**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael John HANNO, Defendant–**
**Appellant.**

**No. 92–5776.**

United States Court of Appeals,
Fourth Circuit.

Argued July 29, 1993.

Decided March 28, 1994.

**ARGUED:** William Lee Davis, III; Lumberton, NC, for appellant. Thomas Michael Gannon, U.S. Dept. of J., Washington, DC, for appellee. **ON BRIEF:** James R. Dedrick, U.S. Atty., Jane H. Jolly, Asst. U.S. Atty., Washington, DC, for appellee.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

## OPINION

WIDENER, Circuit Judge:

Michael John Hanno appeals from a jury verdict of guilty on eight counts involving drug conspiracy, importation, distribution, possession, and smuggling, and one count of illegally transporting monetary instruments. The defendant claims that the district court erred in dismissing six seated but unsworn petit jurors, instructing the jury, and its excessively intervening in the trial by questioning of witnesses. We vacate the convictions and remand for a new trial because the district court erred in dismissing six of the petit jurors already selected by the prosecution and defense, without notice, in the absence of the defendant and his counsel, and without making a record of the proceedings.

On July 20, 1992, jury selection began. Prior to that time, the district court knew that it had two consecutive criminal trials scheduled and two juries to pick. Immediately prior to jury selection on July 20th, the district court stated to counsel that "I may not go with you first but I want to get things lined up." At this time, counsel for the defense informed the court that he had already been told that their trial would be second, scheduled to start the following week, and that the defendant's witnesses and parents were accordingly absent. Stating that that "put him in a box," the district court commenced jury selection. Twelve petit jurors and one alternate juror were selected. The district court acknowledged that the jury was complete, but did not excuse the jurors. The district court informed them that "[i]n all likelihood we will try this case next week and so you will probably be excused, although I can't do it right now but later in the day and will not have to return until next week." Later that same day, the court started jury selection for its next criminal case, *United States v. Wittek,* No. 92–8–01–CR–4–H (E.D.N.C.), which was to be tried first. The Wittek trial commenced that same day, July 20, 1992.

The defendant's attorney attended to affairs not mentioned in the record for the next week, but upon his return to the district court a week later, on July 27th, to commence Hanno's trial, he found that six of the jurors he had previously selected had been removed from his jury and, presumably, used in Wittek's case. The docket in the Wittek case shows that that jury was selected the same day, July 20th, that the Hanno jury initially was. This removal of the Hanno jurors was done in the absence of the defendant and his attorney and without notice to them. The only explanation for the removal of the jurors in Hanno's case appears in the next recorded proceeding[1] in that case on July 27th when the district court said:

---

1. We have reviewed the trial records of both Hanno and Wittek. The taking away of six members of Hanno's jury, which apparently occurred in the process of impaneling the Wittek jury,

We were involved in a term of criminal court last week, and we selected half of the jury and then ran out of jurors. So those of you are seated, six of you, will be joining a group that has already been selected so that we will have a full jury of 12 persons in order to try this case.

The district court then proceeded to recommence jury selection to add six more jurors to the six jurors and one alternate remaining in Hanno's case from July 20th. The alternate that was picked on July 20th remained as an alternate on July 27th. The defendant made no objection to the proceedings on July 27th.

A review of the record of this case, as well as the record in *United States v. Wittek,* so far as it has been transcribed, does not indicate which of the twelve original jurors were replaced on July 27, how the six who were removed from the Hanno jury were chosen, why the clerk did not simply draw more jurors from the jury wheel pursuant to the Jury Selection Plan, or the exact procedure by which, or order in which, the particular six jurors were removed. It is undisputed that the district court removed the six jurors without notice to, and in the absence of, the defendant and his attorney.

## I.

■ As a threshold determination, we should decide whether the district court's removal of the six jurors is reviewable on appeal, since the defendant failed to raise objection at trial.[2] Fed.R.Crim.P. 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

■ In *United States v. Olano,* —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Court specified four conditions to be met to notice error under Rule 52(b). First, there must be an error, meaning a deviation from a legal rule. *Olano,* —— U.S. at ——, 113 S.Ct. at 1775. Second, the error must be plain, meaning clear under current law. *Olano,* —— U.S. at ——, 113 S.Ct. at 1777. Third, the plain error must affect substantial rights, which generally means that the defendant is prejudiced by the error in that it "affected the outcome of the District Court proceedings." *Olano,* —— U.S. at ——, 113 S.Ct. at 1777.

The fourth and last requirement is a determination that the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano,* —— U.S. at ——, 113 S.Ct. at 1777, quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936).

## II.

■ The district court committed several errors that meet the first two prongs of *Olano.* First, the trial court erred when it dismembered the selected jury for the reason that it needed jurors for another trial. Nei-

does not appear in the transcribed record of either case. Whether or not the jury selection proceedings in the Wittek case were reported is not shown by any extant transcript. We must presume they were. The defendant Hanno claims that no transcript exists in his case and the government does not dispute this. For these reasons we conclude, as far as Hanno is concerned, that the requirement that a record of proceedings in his case be kept has not been met. See 28 U.S.C. § 753(b).

**2.** Certainly, the defendant had no meaningful opportunity to make a contemporaneous objection at the time of the removal of the jurors on July 20th, since he and his attorney were absent from those proceedings and without notice of them. As for failure to object to the jurors' removal at recommencement of jury selection on July 27th, it is difficult to conclude that the defendant had a meaningful opportunity to ob-

ject to the necessity of the removal or the removal procedures employed by the district court, since his absence on July 20th precluded him from any knowledge of the detailed facts as to what occurred. The only objection that could have been lodged by the defendant on July 27th was that the July 20th proceedings took place in his absence, and without notice, and that he was without knowledge sufficient to object to the substance of those proceedings. Defense counsel should not be penalized for failure to object based on a ground not known to him, *United States v. Valentine,* 820 F.2d 565, 571 (2d Cir. 1987), citing *United States v. Tramunti,* 500 F.2d 1334, 1341 & n. 3 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). Since we find plain error, despite the lack of objection, we need not decide whether the lack of notice in this case denied the defendant an opportunity to object under Rule 51.

ther the Federal Rules of Criminal Procedure[3] nor the Jury Selection Plan for the Eastern District of North Carolina[4] authorize the removal of selected petit jurors merely in order to supplement another jury in which there was a shortage of jurors. Reasonable fidelity to ordinary jury selection procedures is one of the basic protections required to ensure that criminal trials are fair and juries are randomly selected and impartial.

 The government contends, however, that the district court's action was justified since the "jurors were removed as a matter of practical necessity," Brief at 13, and cites *United States v. Jorn*, 400 U.S. 470, 480, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971), in support. *Jorn* held that a court could not discharge a jury after the defendant had been placed in jeopardy without a showing of a manifest necessity for the discharge. Manifest necessity is equated with so great a need to discharge the jury that "the ends of public justice would otherwise be defeated." *Jorn* at 482, 91 S.Ct. at 555, quoting *United States v. Perez*, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824). *Jorn* was a case in which the district court had discharged the jury, sua sponte, declared a mistrial which was held to be an abuse of discretion, and dismissed the indictment because of double jeopardy. The Court stated that a trial court has a myriad of potential scheduling concerns, including case overloads; the health of jurors, witnesses, and counsel; and the speedy trial requirement, so that the rule against double jeopardy must not be too rigid, but mechanically invoking the rule against double jeopardy would mean that the defendant cannot be brought to justice at all. In Hanno's case, the worst effect that we can suppose, the record being silent, was a minor delay in

Wittek's trial while the clerk drew more jurors from the jury wheel, according to the jury plan, to increase the number required for that trial. We cannot agree with the government that this delay rises to the level of *Jorn*'s requirement that such a delay defeat the ends of justice. The conclusion that there is a manifest necessity to discharge a jury must come after a "scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Jorn*, 400 U.S. at 485, 91 S.Ct. at 557. "The crucial inquiry is whether less drastic alternatives were available." *United States v. Shafer*, 987 F.2d 1054, 1057 (4th Cir.1993). That standard was not met in the case before us in which the district court removed selected jurors from one panel to increase those available for another trial for the purpose of avoiding the minor inconvenience that would have been caused by following available procedures.

 A second error is that Hanno's jury was dismembered without giving notice to and in the absence of the defendant. This is a violation of the defendant's due process right to be present under the constitution and Fed.R.Crim.P. 43(a).[5] "[A]n accused 'has a [constitutional] right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings.'" *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). In our circuit authority most nearly on point here, we concluded in *United States v. Camacho*, 955 F.2d 950, 952 (4th Cir.1992), that a defendant has such a right under the constitution and Rule 43(a) to be present during the impaneling of a jury and we see no reason to distinguish the dismemberment

---

3. Since Fed.R.Crim.P. 24(c) limits removal of a juror and replacement with an alternate to those situations in which a district court determines that a juror is unable to serve or disqualified, it does not cover the removal in this instance. For this reason, the cases relied on by the government which decide judicial discretion pursuant to Rule 24(c) are of less persuasion.

4. Jury Selection Plan of the United States District Court for the Eastern District of North Carolina, dated February 1, 1989 and approved by

the Fourth Circuit Judicial Council on March 2, 1989.

5. Fed.R.Crim.P. 43(a) specifically includes impaneling of the jury:

The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial, *including the impaneling of the jury*, and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.
(Emphasis added.)

of this jury in this case. "Convening a criminal tribunal without the presence of the defendant treads precariously close to the concept of trial *in absentia,* which our system has long disdained." *Camacho,* 955 F.2d at 953, quoting *United States v. Alikpo,* 944 F.2d 206, 209 (5th Cir.1991).

■ The third error that occurred on July 20th, was the dismemberment of the jury in the absence of the defendant's attorney. As the Court noted in *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984), "The presumption that counsel's presence is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." Jury selection is such a critical stage in a criminal trial. That has been held explicitly in the case of *Lewis v. United States,* 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), in which case the court reversed a conviction for murder because the record did not affirmatively disclose "that the prisoner and the jury were brought face to face at the time the challenges were made." 146 U.S. at 375, 13 S.Ct. at 138. The Court stated that

> ... holding as we do that making of challenges was an essential part of the trial and that it was one of the substantial rights of the prisoner to be brought face to face with the jurors at the time the challenges were made, we are brought to the conclusion that the record discloses an error for which the judgment of the court must be reversed.

146 U.S. at 375–76, 13 S.Ct. at 138. The Court in *Lewis* followed the case of *Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), in which it held that the trial of the challenges to jurors for cause conducted out of the presence of the prisoner and his attorney was reversible error, even though not objected to. This decision, like the decision in *Lewis,* was based upon the constitutional requirement of the presence of the accused. The Court found that a proceeding to ascertain the bias of jurors outside the presence of

the accused was one "which involves his substantial rights." 110 U.S. at 578, 4 S.Ct. at 204. See also, *Peretz v. United States,* 501 U.S. 923, ——, 111 S.Ct. 2661, 2664, 115 L.Ed.2d 808 (1991). Thus it has been authoritatively decided that jury selection is a critical stage of a criminal trial and that the presence of the accused is required. *Hopt* even held that the presence of the accused could not be waived by failure to object.[6] Considering that an accused has the constitutional right to be present at his jury selection, we think he has the same right to be present at the dismemberment of a jury which previously had been selected in his presence. On facts indistinguishable from those present here, the court reversed .a conviction because of the absence of the defendant at the dismemberment of his jury in the case of *United States v. Gay,* 522 F.2d 429 (6th Cir.1975). In that case, a jury had been selected, complete with alternates, and a delay of nine days occurred between jury selection and the trial. During that time, without notice to the defendant or his attorney and outside of their presence, the district court excused two regular jurors and one alternate. No record was made of those jurors. Significantly, the decision was made under Rule 43 requiring the presence of the defendant, not under Rule 24 governing the replacement of jurors with alternates. The court decided it was error for the district judge to engage in discussion with members of the jury and to consider requests for excuses out of the presence of the defendant and without giving notice to the defense counsel. The fact that no record was made of the proceeding in excusing those jurors required the court "to assume prejudice." The only difference between *Gay* and the case at hand is the fact that the jurors in *Gay* had been sworn and Gay's attorney objected after the trial had reconvened. *Gay* reasoned that "in a time when our judicial system is being severely questioned, it is as important to maintain the appearance of justice and regularity as it is to be certain of the reality." 522 F.2d at 435. We agree with

---

**6.** While we do not base our conclusion on this aspect of *Hopt,* the fact that the Court only recently has relied on *Hopt* in holding that under Rule 43 a criminal trial may not commence in the absence of the accused may indicate some limitation on present tendencies favoring waiver. See *Crosby v. United States,* —— U.S. ——, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993).

that reasoning and believe it is applicable here.

■ Finally, the district court erred in not recording the proceedings in which Hanno's jurors were removed. The code, 28 U.S.C. § 753(b), requires the recording "verbatim by shorthand, mechanical means, electronic sound recording, or any other method...." [of] "all proceedings in criminal cases had in open court...." As we noted in *United States v. Snead*, 527 F.2d 590, 591 (4th Cir.1975), "[t]he direction is simple and clear; the statute should be obeyed." Although prejudice may be *required* for reversal for violation of the statute, "non-compliance seems fraught with potential for mistake and possible prejudice." 527 F.2d at 591.

### III.

■ *Olano*'s third requirement is that the error prejudice the defendant so that the outcome of the district court proceeding was affected. *Olano*, —— U.S. at ——, 113 S.Ct. at 1777. Since dismembering a jury is analogous to impaneling a jury, we find *United States v. Camacho*, 955 F.2d 950 (4th Cir. 1992), which concerned a defendant's absence from *voir dire*, to be persuasive with respect to prejudice to the defendant in this case. In *Camacho*, 955 F.2d at 953, we said:

> A defendant's absence during the impaneling of the jury certainly frustrates the fairness of the trial. See *United States v. Gordon*, 829 F.2d 119, 123–24 (D.C.Cir. 1987). The absent defendant is denied the opportunity to give advice or suggestions to his lawyer concerning potential jurors. See *Snyder v. Massachusetts*, 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). A defendant's presence is also necessary so that he may effectively exercise his peremptory challenges, *United States v. Washington*, 705 F.2d 489, 497 (D.C.Cir. 1983), a process that is essential to an impartial trial. *Lewis v. United States*, 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892).

As in *Camacho*, we analyze the case under a harmless error analysis and conclude as there that the defendant was prejudiced by his absence. Just as Camacho was prejudiced by being unable to contribute to his jury selection, Hanno was prejudiced because both he and his attorney were prevented by lack of notice from participating in the decision as to whether their selected jurors should be removed, which ones were removed, why those particular ones were removed, or what method was used in their removal. Under the circumstances of this case, Hanno was as much entitled to participate in the dismemberment of his jury as he was in the selection of his jury. The removal of the six jurors, accomplished without notice to, in the absence of, and without the participation of, the defendant and his counsel, completely changed the composition of Hanno's jury and he was sufficiently prejudiced to satisfy the third prong of *Olano*.

We should say that we have examined the record in this case as well as in the Wittek case, which has been referred to. The transcript by the court reporter in the Wittek case, vol. 3, exhibit 5, apparently commences with the notation "Monday, July 20, 1992" with "(jurors absent from the courtroom.)" We must presume that the jury selection process in the Wittek case was recorded by the court reporter pursuant to 28 U.S.C. § 753(b), and we do not adversely remark upon the absence of any transcript of the jury selection process in that case, since there was no issue made of it. Even if we consider that the transcript of the Wittek jury selection was also a part of the record in this case, we do not know what value it would be to have the same transcribed. The point is that the dismemberment of Hanno's jury took place in the absence of the accused and the attorney for the accused, and knowing what took place could only offer more conjecture for what might have been done. When Hanno and his attorney returned to court on the 27th, they were presented with the accomplished fact that the previously selected jury had been dismembered in their absence and without notice.

■ Having found that the errors are plain under current law and affected substantial rights because they prejudiced the defendant, the final requirement of Rule 52(b) review is to determine if the errors seriously affect the fairness, integrity or public reputa-

tion of judicial proceedings. *Olano,* —— U.S. at ——, 113 S.Ct. at 1777. We are of opinion that the removal of selected jurors from one trial so as to avoid a minor delay in another trial, without notice to and in the absence of the defendant and his counsel, and without keeping a record of that removal sufficiently impacts on the fairness, integrity and public reputation of judicial proceedings to warrant reversal.

### IV.

With respect to the jury, the defendant also claims that the removal of the six jurors deprived him of a right to a particular jury. If there is such a right, it is under the due process clause, Justice Powell dissenting, in *Crist v. Bretz,* 437 U.S. 28, 40, 51–52, 98 S.Ct. 2156, 2163, 2168–69, 57 L.Ed.2d 24 (1978), and is not clear under present law. Hanno also claims that the alternate juror should have been on his jury and not using that alternate violated Fed.R.Crim.P. 24(c). He does not claim prejudice on that account, however. Thus, we do not consider either of these contentions under *Olano.*

The other assignments of error are with reference to instructions and excessively intervening in the trial. The assignment of error with respect to instructions is without merit. The claim of excessive intervention may not recur, so we do not address that question.

The judgment of conviction must be vacated and the case remanded for a new trial.

*VACATED AND REMANDED FOR A NEW TRIAL.*