Derrick Anthony DeBruce was convicted of the capital offense of murder committed during the course of robbery in the first degree. § 13A-5-40(a)(2), Ala. Code 1975. In a separate sentencing phase of the trial, DeBruce was sentenced to death. The Court of Criminal Appeals affirmed. This Court automatically granted DeBruce's petition for a writ of certiorari. See Rule 39(c), Ala.R.App.P.
DeBruce raises several issues in his certiorari petition and argues each in his brief to this Court. The issues are the same as were argued in the Court of Criminal Appeals. DeBruce v.State, 651 So.2d 599 (Ala.Crim.App. 1993).
The facts are enumerated in considerable detail in the opinion of the Court of Criminal Appeals; therefore, we will not restate them in detail, but we will outline the essential facts for a better understanding of the issues we address. The evidence tended to show that DeBruce and five other men were in the course of robbing a Talladega Auto Zone store and its customers when Doug Battle, unaware of the robbery, entered the store. After the men had completed robbing the store and its customers, the men began to leave the store. As they started out the door of the store, DeBruce allegedly shot Battle in the back as he lay face down on the floor.
Some of the other customers were later able to identify photographs of the men involved in the robbery. The investigation that followed led to DeBruce's indictment and subsequent trial for the capital murder of Battle. At trial, DeBruce contended that it was Lujuan McCants, another of the robbers, who had shot Battle. DeBruce argued that McCants had bragged to two people about killing Battle. McCants, on the other hand, testifying in exchange for a sentence of life imprisonment, said it was DeBruce who had killed Battle.
DeBruce raises numerous issues in his petition for certiorari review. However, we have not limited our review to the issues he raises, but have reviewed the proceeding to see if there is any plain error or defects.[1] Rule 39(k), Ala.R.App.P.
We have reviewed the opinion of the Court of Criminal Appeals, which addresses each of the issues raised by DeBruce. In addition, as Rule 39(k), Ala.R.App.P., requires, we have searched the record of both the guilt-determining phase and the sentencing phase of DeBruce's trial for any plain error or defect that has or probably has adversely affected DeBruce's substantive rights. We find no plain error to reverse or any other error in DeBruce's trial that requires us to reverse either his conviction or his sentence of death. Even though we find no error to reverse, we elect to address one issue on which the judges of the Court of Criminal Appeals disagreed, that is, whether DeBruce's absence from a hearing on pretrial *Page 626 
motions violated his rights under the Alabama Constitution, or his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. In the Court of Criminal Appeals, there was a dissenting view on this issue. See, DeBruce v. State, 651 So.2d 599 (Ala.Crim.App. 1993) (Montiel, J., dissenting "from the majority's holding . . . that the appellant's absence from a pretrial hearing and a number of motion hearings [was] not reversible error").
The Court of Criminal Appeals addressed DeBruce's absence from what it described as "a pretrial hearing at which a number of motions were considered," as follows:
 "In Harris v. State, 632 So.2d 503, 512
(Ala.Cr.App. 1992), this Court held that in a capital case, 'if the appellant's presence . . . would have been useless to her defense and if the [pretrial] hearing was not considered to be a "critical stage" of her trial, then we can find no error in the appellant's absence from the hearing.' Here, as in Harris, '[t]he appellant has been unable to suggest or demonstrate any possibility of prejudice resulting from [his] absence.' Id.
 ". . . Although this Court is extremely reluctant to make a finding of harmless error in any case in which the death penalty has been imposed, here it is clear beyond any reasonable doubt that the appellant's absence at the pretrial hearing on various legal motions in no way prejudiced him. Here, as in Ex parte King, 564 So.2d 928, 931 (Ala. 1990), the 'hearing necessitated only arguments of law.' "
651 So.2d at 620.
We have examined the transcript of the pre-trial hearing that is the subject of this claim of error, to determine whether the defendant's presence was required by the Constitution of the State of Alabama, the Constitution of the United States, or any law or rule of practice and procedure.
The pertinent portions of the record show that the following occurred when the several pre-trial motions were heard by the trial court, with the Honorable Jerry L. Fielding, presiding. Appearing at the hearing were District Attorney Robert Ramsey and attorneys Erskine Mathis and William K. Delgrosso, both of Birmingham, for the defendant.
At the beginning of the hearing the following transpired:
 "THE COURT: For the record, this is Case Number CC-91-340 in the matter of State of Alabama v. Derrick Anthony DeBruce. This is really a discovery matter, I assume, isn't it?
"MR. MATHIS: Yes, sir.
"MR. RUMSEY: Which one are we on?
 "THE COURT: It is 'Motion for Ballistics Test and Fingerprinting.'
 "MR. RUMSEY: It is my understanding and what I told Erskine a few minutes ago, basically what I'm doing is having my whole file copied, including the witnesses' statements. I'm just going to turn over the whole file."
During the hearing, defendant's counsel stated that he might wish to file a motion, claiming indigency, although he had hired his counsel, if he needed to some experts to do some independent testing, and ask for the State to pay for those experts.[2]
The court next considered the defendant's "Motion To Prohibit Death-Qualification of Prospective Jurors." The substance of the motion was the defendant's contention that being conscientiously opposed to the death penalty should not exclude a prospective juror from the guilt phase of the trial. In essence, the defendant asked for separate juries for the guilt and penalty phases of the trial, if necessary. On this motion, the trial judge said:
 THE COURT: I'll just reserve my rulings on this matter until the time comes for the voir dire examination. I'll have plenty of time to resolve it if it comes up."
The next motion considered at the hearing was the defendant's "Motion for Appointment *Page 627 
of Juristic Psychologist." By this motion, the defendant sought to get an expert to assist him in picking a jury and to have the State pay for the expert. After a brief statement by the defendant's counsel in support of the motion and a statement by the district attorney to the effect that he did not think the law mandated it, the trial judge said:
 "I'll reserve a ruling on that for the time being. It is all going to depend upon whether or not the pauper status is granted. Then I will have to look and see whether or not it will be appropriate."
The next motion considered was the defendant's "Motion for Witness List." The record shows the following:
 "MR. MATHIS: I guess, based on what Robert [the district attorney] told me a while ago, if he is going to open his file to us, we are going to have it. Is that correct, Robert?
 "MR. RUMSEY: Sure. I don't know that I will have a witness list per se in the file that would state every witness that I will call. My only thing there is I may not have a chain witness down or I may not have somebody coming until they are ultimately called. My witness list should be the same as the subpoena list. I just don't want to be caught saying you gave me this witness list and now you are calling somebody that — there may be a chain witness."
From the colloquy in the record, it appears that the district attorney, although not required to give defendant his witness list, agreed to do so, but did not want to "get in a trap where I do something that is above and beyond what the rules require and then there is some allegation that I did not have a particular person on there and them start moving to . . . a witness starts to take the witness stand and they move to exclude that witness's testimony because it wasn't on the witness list." Defense counsel's concern was that he wanted to "to be able to assure my client and assure anybody looking down the road after [a] while that we gave this as good an opportunity as we possibly could have given it to find [any] exculpatory evidence whatsoever."
The next motion considered was one by the defendant styled a "Motion in Limine," which sought to prevent the State from mentioning that the defendant could be subsequently released if he was not convicted of capital murder and sentenced to death. The trial judge granted the motion.
The next motion discussed was a "Motion for Discovery of Impeaching Testimony." Defense counsel said, "I guess I would be referring to co-defendants who may have made arrangements with you to testify in this matter against my client for whatever carrot may have been offered." The district attorney responded, saying that there had been an offer but no formal agreement. The district attorney then mentioned the names of individuals and the arrangements that had been made with each, as he understood them at that time.
The next motion presented was a "Motion to Suppress." Defense counsel said:
 "MR. MATHIS: We are not going to be able to do anything on that without him here, Judge.
 "THE COURT: All right, we will carry this over, either later on this afternoon or sometime during the trial.
"MR. MATHIS: Yes, sir."
The next motion was a "Motion for Aggravating and Mitigating Circumstances." By this motion, defense counsel was "primarily looking forward to the penalty phase of this trial if there is one, and in trying to prepare for it as best we possibly can." There was a colloquy between the trial judge, the district attorney, and defense counsel, which essentially culminated in the district attorney's stating that he thought the defendant had a prior robbery conviction, although he could be wrong about that, but that the indictment charged the aggravating circumstance of murder during the course of a robbery and that the only mitigating circumstance that he knew about would be the defendant's age.
The next motion was a "Motion for Individual Voir Dire and Sequestration of the Jury." The colloquy regarding this motion suggests that the defendant did not want to be forced to ask certain questions to the whole group of jurors. The trial judge stated that he sometimes allowed specific questions *Page 628 
to panels of 15 or so, but that "we will look at [the request] when we get started." The effect of his ruling was to reserve a ruling on the motion until the selection of the jury began, which appears to be what defense counsel was requesting.
The next motion was a "Motion for Discovery." In view of the "open file" statement made by the district attorney at the beginning of the hearing, and in view of the colloquy between the district attorney and defense counsel relating to specific items of evidence, it appears that defense counsel was satisfied that he would be able to discover items of evidence that the district attorney had or would introduce at trial.
The next motion was a "Motion for Complete Recordation and for Daily Transcripts During the Trial." The trial judge said that he would have those provided and made another offer, to which defense counsel replied, "I can't ask for any more than that."
The next motions dealt with defense counsel's concern about the State's use of gruesome photographs of the scene or from the medical examiner's office. From the record it appears that defense counsel was satisfied that he could see the photographs that were taken and was satisfied with the district attorney's statement that "we possibly will just use the Polaroids."
The next motion was a "Motion to Require Disclosure of any and all Information Concerning Prospective Jurors which may be Favorable to the Defense." The substance of the motion was to require the district attorney to voluntarily notify defense counsel of any fact concerning a prospective juror, even if defense counsel had not asked a specific question to elicit the information. The trial judge denied the general request, but from the colloquy it appears that he thought that the parties, at voir dire, should ask specific questions touching a juror's qualifications to serve.
The next motion was a "Motion for Grand Jury Transcript." The district attorney stated, "We do not have a Grand Jury — we do not record the routine Grand Jury proceedings."
Several of the motions discussed could be classified as being on matters that could come up during the trial, and defense counsel was seeking an advance ruling, such as a "Motion to Disqualify all Potential Jurors That Knew or Were Acquainted With the Victim or His Family," which the Court suggested would have to wait until the jury was being selected. Defense counsel also wanted, in his "Motion for Introductory Instructions," to find out what the trial judge usually used to instruct the jury in a capital case. He also wanted to have the instructions go to the jury. The trial judge refused to give a prior ruling on what he would or would not do during the actual trial of the case.
The defendant's "Motion to Preclude the Death Penalty on the Grounds of Racial Discrimination for Discovery" was designed to raise the issue of disproportionate sentencing of blacks to death. The district attorney stated that there had been 15 whites sentenced to death in Talladega County and four blacks. The court said: "I deny the motion at this time and reserve a ruling if I change my mind."
Another motion considered was a "Motion to Bar the Death Penalty as Cruel, Unusual and Degrading Punishment." As the trial judge noted, this was a constitutional challenge to the imposition of the death penalty, and the court noted that defense counsel was "preserving the constitutional challenge on that,"
The next motion considered was a "Motion to Prohibit the District Attorney from Exercising Discriminatory Peremptory Challenges and For Discovery." This was a Batson-type motion filed before actual jury selection began. The trial judge properly stated, "We will have a hearing on that, I would imagine, if it is brought to my attention."
The defendant also wanted to have witnesses sequestered before voir dire began, and to have jurors also sequestered after they were selected. The record seems to indicate that the trial judge said he would grant both requests if the matter was brought to his attention at the appropriate times during the proceeding. *Page 629 
The defendant also wanted to have the court give him a standing objection to certain matters so that he would not have to object and state the grounds during the trial. The trial judge did not formally grant this request, but did say that with regard to particular matters he would allow counsel to say "for the same reasons I assigned earlier or something," which indicated that as long as he knew the nature of the objection and had the substance of it before him, he would give counsel the benefit of his request as best he could.
With regard to the "Motion to Suppress," the trial judge said, "I am holding [it] in reserve."
Based on the foregoing, we determine, as did the majority in the Court of Criminal Appeals, that the defendant's rights were not violated because of his absence from the pretrial hearing where these various motions were considered. We reach this conclusion after reviewing his argument that he had a right to be present at the hearing, and that, under the Alabama Rules of Criminal Procedure, he could not waive that right.
Our reading of the transcript of the hearing indicates that the hearing was conducted almost as if it were a pre-trial hearing in a civil case, and that only questions of law were presented in regard to every one of the motions except two, the Motion to Suppress and the Motion to Proceed in Forma Pauperis, as to which testimony of the defendant might have been required in support of his motions. We hold that DeBruce has misinterpreted the provisions of the Bill of Rights of the Federal Constitution, the Declaration of Rights of the Alabama Constitution, and the cases addressing those rights.
DeBruce, of course, has a substantive right to be present, either in person or by counsel, or both, at several stages in a criminal proceeding. The question presented here is whether he was entitled to be present at the pretrial hearing in this case. We hold that DeBruce was not prejudiced by his absence from the pretrial hearing, and in reaching this conclusion we are persuaded by reasoning used in several federal cases construing a Federal Rule of Criminal Procedure that is substantially similar to Rule 9 of the Alabama Rules of Criminal Procedure, which we believe is controlling here.
Pursuant to the authority granted by the people to this Court in Amendment 328, § 6.11, Alabama Constitution 1901, this Court adopted a comprehensive set of Rules of Criminal Procedure to "govern the practice and procedure in all criminal proceedings in all courts of the State of Alabama." Rule 1.1, Ala.R.Crim.P. The rules could be divided into the following general categories: "Scope of the Rules," "Procedures Before Appearance," "Appearance," "Pretrial Procedures," "Trial," "Sentencing and Judgment," and "Post-trial Procedures." There are, of course, general provisions dealing with the rights of a defendant, scheduling of trials, witnesses, etc., and Rule 9, "Presence of the Defendant," would be in this category.
Rule 9, insofar as it relates to the issue here, reads as follows:
"Rule 9.1. DEFENDANT'S RIGHT TO BE PRESENT
 "(a) Right to be present. The defendant has the right to be present at the arraignment and at every stage of the trial, including the selection of the jury, the giving of additional instructions pursuant to Rule 21, the return of the verdict, and sentencing.
". . . .
 "(2) A defendant may not waive the right to be present if:
 "(i) The defendant is charged with an offense which may be punishable by death; or
 "(ii) The defendant is not represented by counsel at the proceedings at which the defendant is not present, except in minor misdemeanor cases or proceedings conducted after the defendant has been adjudicated guilty."
The Committee Comments to Rule 9.1 state:
 "Rule 9.1 sets forth the right of the defendant to be present at every stage of the trial and provides for waiver of that right. Rule 9.1 is based on Rule 43, Fed.R.Crim.P., and Rule 713, Unif.R.Crim.P. (Proposed Final Draft, 1974). *Page 630 
 "Rule 9.1(a) states the right of a defendant to be present at all stages of the criminal prosecution at which a defendant has a right to be heard. Sixth Amendment to the United States Constitution; Article I, § 6, Alabama Constitution of 1901; Ex parte Bryan, 44 Ala. 402 (1870). Under Neal v. State, 257 Ala. 496, 59 So.2d 797 (1952), the continuous presence of the defendant from arraignment to sentencing is an essential part of the process provided for the trial of the defendant, without which the court has no jurisdiction to pronounce judgment against the defendant.
 "Section (b) allows a defendant to waive the right to be present. The defendant may make an express waiver in open court or may waive the right by voluntary absence from the proceeding. See Taylor v. United States, 414 U.S. 17
[94 S.Ct. 194, 38 L.Ed.2d 174] (1973).
 "Waiver of the right to be present must be clear and unequivocal. Waiver must be affirmative and positive in nature and made by the defendant personally. Haynes v. State, 40 Ala. App. 106, 109 So.2d 738 (1958), cert. denied, 268 Ala. 546, 109 So.2d 746 (1959). Consent or acquiescence of a defendant to a waiver of the right cannot be presumed but must affirmatively appear from the record. Berness v. State, 263 Ala. 641, 83 So.2d 613 (1955). Thus, section (b) allows the court to find an implied waiver only when the defendant has been present at the commencement of the trial and fails to appear at some later stage of the trial. Such a waiver may not be inferred if the defendant has never appeared at trial, except in the case of a minor misdemeanor which by definition carries no threat of imprisonment.
 "The standards for waiver are those required for waiver of other constitutional rights. The factors which the court should consider in finding a valid waiver are whether the defendant had personal notice of the time of the proceeding, the right to be present at it, and a warning that the proceeding would go forward in the defendant's absence should he fail to appear. However, according to Taylor, it is not incumbent upon the court to warn the defendant expressly of these three factors where the defendant has personally appeared at the commencement of trial, and it can reasonably be assumed that the defendant has knowledge of the right to be present. On the other hand, where the defendant is not present at the commencement of the proceeding in a minor misdemeanor case, it is clear that the court must ascertain that the defendant knew of the time and place to appear and the consequences of his failure to appear.
 "A defendant who has received the required warnings might still be involuntarily absent and should be permitted to prove that fact in a subsequent or collateral proceeding. The trial court does not commit error in trying the defendant in his absence where the defendant knows the date of the trial and simply fails to appear and there is no evidence suggesting that the defendant is involuntarily absent. Gulledge v. State, 526 So.2d 654 (Ala.Crim.App. 1988). Also, the decision to proceed in light of a voluntary waiver is discretionary, not mandatory, with the court. The court is in no instance required to proceed.
 "Under the rule, a defendant is prohibited from waiving the right to be present in two situations. The first is where the defendant is charged with violation of an offense punishable by death. Lee v. State, 244 Ala. 401, 13 So.2d 590 (1943); Berness v. State, supra; Haynes v. State, supra. The other prohibition is where the defendant is not represented by counsel. Fundamental fairness quite clearly is violated if neither the defendant nor counsel for the defendant is present at trial. If a defendant who has waived counsel is subsequently absent during trial under circumstances from which the court may infer a waiver of his right to be present under Rule 9.1(b)(1)(ii), the court may then appoint counsel to represent the defendant in his absence and resume trial unless the circumstances would require a mistrial or continuance in the interest of justice.
 "Rule 9.1(c) is adopted from Rule 713(c) of the Unif.R.Crim.P. (Proposed Final Draft, 1974), and deals with the situation above where the defendant's presence is required at trial. *Page 631 
 "A provision similar to Rule 9.1(d) appears in Rule 43, Fed.R.Crim.P."
Rule 713 of the Uniform Rules of Criminal Procedure, in pertinent part, provides:
 "(a) Right of presence. The defendant has a right to be present at every stage of the trial, including all proceedings specified in Rule 512(b) through 531 and 533 through 535, and at the disposition hearing under Rule 613."
The comment to that rule reads:
 "This Rule deals only with the defendant's presence at trial proceedings and at the disposition hearing. Presence at other proceedings is covered by the Rules dealing with those proceedings. See, e.g., Rules 431(f) (deposition), 437(e)(1) (nontestimonial evidence procedure), 444 (plea), 511(a) (waiver of jury). The trial proceedings extend from the selection of the jury to the return of the verdict. The scope of the disposition hearing is described in Rule 613. The right of the defendant to be present during such proceedings is universally recognized. While defendant's presence at trial is supported by his right to confront witnesses, see Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the right to be present exists apart from that constitutional guarantee. See Synder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). Most states have provisions recognizing that right, both with respect to trial and dispositional proceedings, although the provisions are frequently stated in terms of a requirement that the defendant be present. See, e.g., F.R.Crim.P. 43; Tex. Code Crim P. art. 33.03. But compare Ill. Const., Art. 1, § 8; Cal. Const. Art. 1, § 13; Idaho Const. Art. 1, § 13 (all phrased in terms of a right to be present.)"
Although this Court, by a rule of court, cannot change the substantive law of this State and cannot take away from an accused a basic constitutional right that he or she might have, this Court can adopt rules of procedure to govern the proceedings in a criminal case, so long as those rules guarantee substantive procedural due process of law and do not infringe upon a right granted an accused by the State or Federal Constitution, or other provisions of substantive law.
It is quite apparent that in adopting Rule 9, the Court considered the provisions of Rule 713 of the Uniform Rules of Criminal Procedure and Rule 43, Fed.R.Crim.P. The provisions of Rule 9 are strikingly similar to those of Rule 43, Fed.R.Crim.P., and we believe that decisions of federal courts construing Rule 43 should be persuasive.
After reviewing the law, both State and Federal, touching the issue, and after due reflection, we conclude, as a majority of the Court of Criminal Appeals did, that no reversible error occurred. It is apparent that the proceedings from which the defendant was absent were pre-trial proceedings, and that neither of them involved the defendant's "arraignment" or "the trial." In fact, it appears that each of the pre-trial motions must be made "at or before arraignment or by such later date as may be set by the court." Rule 15.3, Ala.R.Crim.P.
In Kentucky v. Stincer, 482 U.S. 730, 107 S.Ct. 2658,96 L.Ed.2d 631 (1987), the Supreme Court had before it the question of when and under what circumstances a defendant has a constitutional right to be present at a hearing involving his or her case. In Stincer, the defendant was excluded from a hearing the trial judge held to determine whether two child witnesses were competent to testify in the case. In that case, the hearing was held during the actual trial of the case, not pre-trial, as was the case here, but the Court did discuss the question of a defendant's right to confront witnesses against him.
In Stincer, the Supreme Court held that: (1) a defendant's rights under the Confrontation Clause of the Sixth Amendment were not violated by his exclusion from a hearing to determine the competency of the two child witnesses, and (2) a defendant's rights under the Due Process Clause were not violated by his exclusion from the competency hearing. In its opinion, the United States Supreme Court discussed the rights of a defendant to be present at critical stages of a criminal proceeding and discussed whether the proceedings were conducted before the trial *Page 632 
commenced or were being conducted pretrial.
In the Stincer case, the defendant Stincer had argued, among other things, to the Kentucky Supreme Court that his exclusion from the hearing regarding the competency of the two girls denied him due process and violated his Sixth Amendment right to confront the witnesses against him. The Kentucky Supreme Court, by a divided vote, agreed that, under the Sixth Amendment of the Federal Constitution and under § 11 of the Bill of Rights of the Kentucky Constitution (the right "to meet the witnesses face to face"), Stincer had an absolute right to be present at the competency hearing because the hearing "was a crucial phase of the trial." Stincer v. Commonwealth,712 S.W.2d 939, 940 (Ky. 1986). The Kentucky court explained that Stincer's trial "might not have taken place had the trial court determined that the children were not competent to testify." Id., at 941. Two Kentucky justices dissented, concluding that Stincer's right to confront the witnesses against him was not violated, because he had had the opportunity to assist counsel fully in cross-examining the two witnesses at trial. Id., at 942-44.
In Stincer, the Commonwealth of Kentucky, and the attorneys general of several States by amicus briefs,[3] argued before the Supreme Court of the United States that Stincer's exclusion from the competency hearing regarding the two children did not violate the Confrontation Clause, because, they argued, a competency hearing was not "a stage of trial where evidence or witnesses are being presented to the trier of fact."482 U.S. at 739, 107 S.Ct. at 2664. The United States Supreme Court, in addressing this argument, stated:
 "Distinguishing between a 'trial' and a 'pretrial proceeding' is not particularly helpful here, however, because a competency hearing may well be a 'stage of trial.' In this case, for instance, the competency hearing was held after the jury was sworn, in the judge's chambers, and in the presence of opposing counsel who asked questions of the witnesses. Moreover, although questions regarding the guilt or innocence of the defendant usually are not asked at a competency hearing, the hearing retains a direct relationship with the trial because it determines whether a key witness will testify. Further, although the preliminary determination of a witness' competency to testify is made at this hearing, the determination of competency is an ongoing one for the judge to make based on the witness' actual testimony at trial.
 "Instead of attempting to characterize a competency hearing as a trial or pretrial proceeding, it is more useful to consider whether excluding the defendant from the hearing interferes with his opportunity for effective cross-examination. No such interference occurred when respondent was excluded from the competency hearing of the two young girls in this case. After the trial court determined that the two children were competent to testify, they appeared and testified in open court. At that point, the two witnesses were subject to full and complete cross-examination, and were so examined. Tr. 38-58 (cross-examination of T.G.); id., at 71-84 (cross-examination of N.G.). Respondent was present throughout this cross-examination and was available to assist his counsel as necessary. There was no Kentucky rule of law, nor any ruling by the trial court, that restricted respondent's ability to cross-examine the witnesses at trial. Any questions asked during the competency hearing, which respondent's counsel attended and in which he participated, could have been repeated during direct examination and cross-examination of the witnesses in respondent's presence. See California v. Green, 399 U.S. [149], at 159, 90 S.Ct. [1930], at 1935 [26 L.Ed.2d 489 (1970)] ("[T]he inability to cross-examine the witness at the time he made his prior statement cannot easily be shown to be of crucial significance as long as the defendant is assured of full and effective cross-examination at the time of trial")."
482 U.S. at 739-40, 107 S.Ct. at 2664. (Footnotes omitted.) We believe that the ruling in Stincer is instructive in deciding the issue before us: Were the defendant's constitutional *Page 633 
rights violated by his absence from the hearing on the pretrial motions?
Rule 9 specifically addresses these rights of a defendant. Rule 9.1, Ala.R.Crim.P., states, in part, that "[t]he defendant has the right to be present at the arraignment and at every stage of the trial, including the selection of the jury, the giving of additional instructions pursuant to Rule 21, the return of the verdict, and sentencing."
How should the words "the trial" in Rule 9.1 be interpreted in a capital case where the right of a defendant to be present cannot be waived? We have examined some of the records surrounding this Court's adoption of Rule 9, and we think this Court intended the words "the trial" to refer to the proceedings beginning at the time the trial commences, and should be construed in pari materia with the provisions of Rule 19, Ala.R.Crim.P., "Trial." Our construction of these words seems to be consistent with the construction of Rule 43, Fed.R.Crim.P., which contains similar wording.
In Government of the Virgin Islands v. George, 680 F.2d 13
(3d Cir. 1982), the court held that "a trial 'commences' for Rule 43 purposes (as distinguished from double jeopardy purposes) when jury selection begins, not when the first juror or witness is sworn." 680 F.2d at 15. In George, the court said:
 "Although it is true that jeopardy does not attach until the jury is sworn, Crist v. Bretz, 437 U.S. 28, 35-38, 98 S.Ct. 2156, 2160-2161, 57 L.Ed.2d 24 (1978); Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), or, in a nonjury trial, until the first witness is sworn, Serfass v. United States, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975), it does not follow that the same test must be applied in determining when a trial 'commences' for purposes of Rule 43.
". . . .
 "The principle that a trial 'commences' for Rule 43 purposes when jury selection begins was implicit in our holding in Government of the Virgin Islands v. Brown, 507 F.2d 186, 11 V.I. 453 (3d Cir. 1975). In Brown, the defendant was absent when jury selection began, but was present at the conclusion of jury selection and during the remainder of the trial. This court assumed that since the defendant had been absent when jury selection began, he had been absent at the commencement of his trial, but went on to hold that Brown had nevertheless waived his Rule 43 right to be present during the selection of the jury."
George, 680 F.2d at 15.
Federal Courts that have been called upon to construe Rule43, Fed.R.Crim.P, which reads substantially like our Rule 9, have come to the same conclusion that we have reached.[4] InUnited States v. Gradsky, 434 F.2d 880 (5th Cir. 1970), cert. denied, sub nom. Roberts v. United States, 401 U.S. 925,91 S.Ct. 884, 27 L.Ed.2d 828 (1971), and Gradsky v. United States,409 U.S. 894, 93 S.Ct. 203, 34 L.Ed.2d 151 (1972), after the defendants were convicted for multiple violations of federal law, evidentiary hearings were conducted to determine whether their convictions were tainted by illegal wiretaps. The trial court found no evidence of taint and ordered the convictions reinstated. The defendants filed motions to vacate and set aside the order, alleging that their presence had been required at evidentiary hearings. The district court determined that the defendants' constitutional rights had not been infringed upon by their absence from the evidentiary hearings, and it denied motions to vacate and set aside the order. The defendants appealed. The Court of Appeals (Ingraham, Circuit Judge) held that where the defendants were represented by a competent attorney at the evidentiary hearings, and the attorney felt that the defendants' presence was unnecessary, and the attorney had an ample opportunity for cross-examination, and there was no showing that the defendants suffered prejudice by their absence, the defendants' constitutional rights were not violated by their absence and any *Page 634 
possible error in their absence from the hearings did not affect their substantial rights. The Gradsky Court stated:
 "Assuming, arguendo, that appellants possessed the requisite standing, we find no merit in their contentions concerning their non-presence at the evidentiary hearings. The Sixth Amendment and Fed. Rules Cr.Proc. 43 do guarantee a defendant the right to be present at the arraignment and 'at every stage of the trial'. No appellate court has extended this right to an evidentiary hearing. Appellants place great reliance on McKissick v. United States, 379 F.2d 754 (5th Cir. 1967) and Cross v. United States, 117 U.S.App.D.C. 56, 325 F.2d 629 (1963). Both cases were concerned with actions occurring during the course of the trial. In McKissick, the trial court declared a mistrial because the defendant's attorney told the court in chambers that defendant had admitted perjury. The case was remanded to determine whether defendant was absent during the conversation in chambers, and if so, whether there was any prejudice to his rights. See United States v. Lewis, 420 F.2d 686, 687 (5th Cir. 1970).
 "Appellants assert, however, that the Supreme Court has expressly declined to specify the procedure to be followed in evidentiary hearings, citing Giordano v. United States, 394 U.S. 310, 314, 89 S.Ct. 1163, 1165, 22 L.Ed.2d 297 (1969) (concurring opinion). Justice Stewart, in the same paragraph, explained that 'Nothing in Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 [(1969)], requires an adversary proceeding and full disclosure for resolution of every issue raised by an electronic surveillance." Taglianetti v. United States, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969).' "
434 F.2d at 882-83.
The Court further interpreted the provisions of Rule 43 as follows:
 "The issue during the evidentiary hearings was not one of guilt or innocence but one of 'taint'. The purpose was to allow government employees connected with the wiretap to give testimony relevant to the question of whether the evidence leading to appellants' convictions was tainted. Their testimony was insisted upon by appellants' counsel. It is apparent that these hearings were not a 'critical stage' of the proceedings within Rule 43, and appellants' actual presence could not have aided their defense. In Stein v. United States, 313 F.2d 518, 522 (9th Cir. 1962), the court held that '(t)he presence of a defendant must bear a reasonably substantial relationship to the opportunity to defend. The Constitution does not assure "the privilege of presence when presence would be useless, or the benefit but a shadow."' See Snyder v. Massachusetts, 291 U.S. 97, 106, 54 S.Ct. 330, [332], 78 L.Ed. 674 (1934); Pope v. United States, 287 F. Supp. 214, 218 (W.D.Tex. 1967), aff'd, 398 F.2d 834 [(5th Cir. 1968)], cert. den., 393 U.S. 1097, 89 S.Ct. 886, 21 L.Ed.2d 787
(1969).
 "Furthermore, it is well established that Rule 43 must be considered together with Rule 52(a), Fed. Rules Cr.Proc., which provides that harmless error is to be disregarded. Peterson v. United States, 411 F.2d 1074, 1080 (8th Cir. 1969); Estes v. United States, 335 F.2d 609, 618 (5th Cir. 1964). In Estes, the court found no prejudice to defendant's substantial rights, where the court in his absence submitted written charges to the jury in response to jurors' questions. In Yates v. United States, 418 F.2d 1228, 1229 (6th Cir. 1969), the court found no merit in the defendant's claim that his constitutional rights had been violated by his exclusion from a hearing to suppress evidence. We likewise reject appellants' contentions that their constitutional rights have been violated, and we find beyond a reasonable doubt that any possible error in their absence from the hearings did not affect their substantial rights. Rule 52(a), Fed. Rules Cr. Proc.; Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
 "In sum, we find that appellants were represented by competent counsel during their trial and at the evidentiary hearings. Appellants were personally present at all times except for these evidentiary hearings, and their presence at these hearings would not have aided their defense. They *Page 635 
suffered no prejudice and were not deprived of a fair trial or due process of law. Accordingly, the ruling by the court below is affirmed and the mandate shall issue forthwith. No stay will be granted pending petition for rehearing or application for writ of certiorari."
434 F.2d at 882-84.
In United States v. Hanno, 21 F.3d 42 (4th Cir. 1994), the defendant's jury was "dismembered" in his absence and without his having been given notice.[5] The court held that this was a violation of the defendant's due process right to be present under the Constitution and Fed.R.Crim.P. 43(a). The court held that "an accused 'has a [constitutional] right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings,' " citing Faretta v. California,422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). The Hanno court noted that in United States v. Camacho,955 F.2d 950, 952 (4th Cir. 1992), the Camacho court had concluded that a defendant had such a right under the Constitution and Rule 43(a) to be present during the empaneling of a jury and the Hanno court said it could see no reason to distinguish between facts regarding the "dismemberment" of the jury inHanno and the facts of Camacho, and wrote, " 'Convening a criminal tribunal without the presence of the defendant treads precariously close to the concept of trial in absentia, which our system has long disdained.' Camacho, 955 F.2d at 953, quoting United States v. Alikpo, 944 F.2d 206, 209 (5th Cir. 1991)." 21 F.3d at 47.
After thoroughly considering the purposes of Rule 9 and the provisions of the State and Federal Constitutions relating to a defendant's right to be present, and after carefully examining the record made during the trial court's consideration of the various motions, we are convinced that the trial judge did not violate any right of the defendant as guaranteed by the provisions of Rule 9, or by either the State or the Federal Constitution.
We have also examined the record and determined that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. Moreover, we have independently weighed the aggravating and mitigating circumstances, and have specifically considered the age and race of the defendant, to determine whether the death penalty was freakishly imposed; we conclude that it was not, and that the trial court's sentence of death was authorized by law under the circumstances of this case and was not excessive or disproportionate to the penalty imposed in other robbery-intentional killing cases.
We have thoroughly and meticulously reviewed the record, the applicable case law, and the opinion of the Court of Criminal Appeals. We conclude that the judgment of that court upholding the defendant's conviction and sentence of death is due to be affirmed.
AFFIRMED.
STEAGALL, KENNEDY and INGRAM, JJ., concur.
HOUSTON, J., concurs specially.
HORNSBY, C.J., concurs in the result.
ALMON and SHORES, JJ., dissent.
[1] " 'Plain error' only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings." Ex parte Womack,435 So.2d 766, 769 (Ala.), cert. denied, 464 U.S. 986,104 S.Ct. 436, 78 L.Ed.2d 367 (1983), quoting United States v. Chaney,662 F.2d 1148, 1152 (5th Cir. 1981). The plain error standard applies only where a particularly egregious error occurs at trial. Ex parte Harrell, 470 So.2d 1309, 1313 (Ala.),cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276
(1985). When the error "has or probably has" substantially prejudiced the defendant, this Court will take appropriate action. Rule 39(k), Ala.R.App.P.; Ex parte Henderson,583 So.2d 305, 306 (Ala. 1991), cert. denied, Henderson v. Alabama,503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992); see Rule 45(A), Ala.R.App.P.
[2] There was some discussion about whether the defendant wanted to do some independent testing and the court noted that the case had already been continued once at the defendant's request and was set for trial on a specific date. Defendant's counsel stated that he did not want to delay the trial.
[3] Including then Alabama Attorney General Don Siegelman.
[4] Fed.R.Crim.P. 43(a) specifically includes empaneling of the jury:
"The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial, including the impaneling of the jury, and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule."
[5] The "dismemberment" of the Hanno jury consisted of the district judge's "dismissing six of the petit jurors already selected by the prosecution and defense, without notice, in the absence of the defendant and his counsel." 21 F.3d at 44. Upon defense counsel's return to the district court, "[t]he district court then proceeded to recommence jury selection to add six more jurors." 21 F.3d at 45.