UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 96-4233
(CR-95-55-F)

United States of America,

Plaintiff - Appellee,

versus

Dwaine Francis Teel,

Defendant - Appellant.

O R D E R

The Court amends its opinion filed October 10, 1997, as follows:

On the cover sheet, section 3, line 4 -- the district court's number is corrected to read "CR-95-55-F."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 96-4233

DWAINE FRANCIS TEEL,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CR-95-55-F)

Submitted: September 2, 1997

Decided: October 10, 1997

Before HAMILTON and WILLIAMS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Joseph E. Zeszotarski, Jr., POYNER & SPRUILL, L.L.P., Raleigh,
North Carolina, for Appellant. Janice McKenzie Cole, United States
Attorney, John S. Bowler, Assistant United States Attorney, Raleigh,
North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Dwaine Francis Teel appeals from his convictions for conspiring to distribute cocaine base in violation of 21 U.S.C. § 846 (1994), and distributing cocaine base in violation of § 21 U.S.C. § 841 (1994).

The Government's evidence showed that Teel was a "middleman" in a drug distribution network. The trial testimony related to two drug sales of crack cocaine that Teel set up between the same parties. Clinton Pritchard, a confidential informant, testified that on January 23, 1995, he was instructed to make a controlled buy. He and his car were searched and he was wired by the police in preparation for the drug sale. He went to George Grimes' home, picked Grimes up, and they drove to a particular area. Grimes told Pritchard to stop at a particular residence, which had a mailbox with the name "Teel" on it, and Pritchard gave Grimes $2200 with which to make the drug purchase. While Pritchard waited outside, a person he described as "the contact" came and left in a Nissan 300 ZX. Grimes returned to the car and presented Pritchard with two ounces of crack cocaine. After Pritchard dropped Grimes off at his house, Pritchard turned the drugs over to the police, who again searched him and his car and debriefed him.

Pritchard testified regarding a similar scenario on January 30, 1995. On January 30, however, Pritchard stated that "the contact" was apparently already at the residence waiting and had driven a Volkswagen Jetta. Also, Pritchard saw a young man sitting on the porch, but he was not able to get a good look at his face because it was drizzling that day and the person was wearing a dark hat. Pritchard believed that the same drug source was involved during this transaction because the dollar amount and the weight of the drug was the same. Again, Pritchard drove Grimes back, met the police, turned over the drugs, and was searched and debriefed. Under cross-examination, Pritchard stated that he believed Grimes did not have the

2

drugs on him when he first picked him up because if he had the sale would have taken place immediately.

Grimes testified that he had known Pritchard for years. Consistent with Pritchard's testimony, Grimes stated that Pritchard had called on January 23, asking for a connection to drugs. Based on prior conversations, Grimes understood that Pritchard was looking for "rocks," crack cocaine. Grimes called Teel because of earlier conversations in which Teel encouraged Grimes to channel such drug requests to him. Teel told him that he could make the connection and confirmed this with a prompt return call.

Grimes described being picked up by Pritchard on January 23 and driving to Teel's house. Like Pritchard, Grimes stated that Pritchard waited outside while he went inside. Grimes further testified that while he and Teel were waiting for the drugs to be delivered, the only people in the house were he, Teel, and Teel's mother, who was in a different room. Michael Hollis then pulled into the driveway and came into the house. Teel asked Hollis if he had the drugs, and Hollis reached into his pocket and produced the drugs. Grimes then went outside to the car to get the money from Pritchard. Grimes also stated that the crack cocaine was handed from Hollis to Teel and then to himself.

Grimes described a virtually identical scenario on January 30. When he and Pritchard arrived at Teel's house, Teel was waiting for them on the porch. Grimes and Teel went into the house and made the transaction in the same manner. Grimes took the crack cocaine to Pritchard who was waiting in the car. Again, the amount of the transaction was $2200.

Hollis also testified for the Government. He stated that on January 23, he received a call from Teel indicating that Teel had someone who wanted to buy crack cocaine. He drove the drugs to Teel's house in either his blue ZX (Nissan) or white Jetta (Volkswagen). He stated that he gave the drugs directly to Teel and Teel gave him the money. Like Grimes, Hollis testified that the drug transaction occurred in the kitchen and that Teel's mother was in another room. He testified that an identical transaction occurred on January 30. However, he did not remember Grimes being in the house at the time of the transaction.

3

He repeated that he had given the drugs directly to Teel, not to Grimes.

The defense did not object to the Government's closing argument. During defense counsel's closing argument, the defense attacked the credibility of the Government's witnesses. Defense counsel made the following statements:

> The Government has no evidence that they seized drugs from Dwaine Teel, they have no undercover agent buying from Dwaine Teel. There is no, there is no corroboration for what those two men said on the witness stand.
>
> I submit that you, ladies and gentlemen, can't believe Mr. Grimes or Mr. Hollis.
>
> Ladies and gentlemen, I submit to you that Mr. Grimes lied to you on the witness stand. He didn't tell you about the trips to New York that he told Mr Pritchard [about]. Now, he said I have just lied to Mr. Pritchard and the Government will say it is irrelevant to the matters at hand, but it shows that Mr. Grimes will bend the truth to help himself. And he is helping himself here to bring in other people to take accountability for his own acts. He couldn't get straight whether he was under indictment or not. He just will not give a straight answer, ladies and gentlemen.

Defense counsel also spoke in the first person and made statements such as "I find it interesting that . . ." and "I submit to you that . . . ."

In her rebuttal argument, the prosecutor made the following statements:

> Ladies and gentlemen, counsel has told you that there is no corroboration. <u>I think there is corroboration in this case and I'm sure you realize that's not true. . . . Now, is this a grand scheme to frame the defendant? I don't think so and I don't believe you think that either.</u>

4

Now, counsel characterized George Wayne Grimes as a major drug dealer and addict. He certainly did deal drugs, and he certainly is a drug addict whether he was a major drug dealer, no evidence of that, but I'm not going to minimize his involvement with drugs. But counsel thinks something is wrong with the fact that he was going to cooperate. . . . There was nothing wrong with Grimes' decision to cooperate. He said Grimes couldn't give you a straight answer as to whether he is indicted or not. Shame on counsel. Grimes is not a lawyer. He is a man in trouble. And is there really something wrong with trying to help yourself? Was there something wrong with Mike Hollis getting on the stand and telling the truth about what happened. Is there something wrong with George Grimes getting on the stand and telling you what really happened. That's how we know. We are not going to bring anybody in here that doesn't know what they are talking about that will be obscene. Those people know what happened, they are cooperating; sure to help themselves out. That is a primal instinct. What each of us have the instinct to do is help themselves. That's what they are doing. That is precisely what they are doing. I believe they are not lying. I think you see the truth in what they said.

Teel did not object to the prosecutor's rebuttal argument.

On appeal, Teel claims that the prosecutor's remarks during her rebuttal argument were prejudicial and require reversal of his convictions and a new trial. Teel specifically complains of the four highlighted portions of the prosecutor's rebuttal argument.

Because Teel did not object to the Government's closing argument we review for plain error. See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 734 (1993); United States v. DePew, 932 F.2d 324, 327-28 (4th Cir. 1991). To correct plain error the appellate court must find (1) an error, (2) which is plain and obvious under existing law, (3) which is so prejudicial as to affect the outcome of the proceedings, and (4) which seriously affects the fairness, integrity, or public reputation of the proceedings. See United States v. Hanno, 21 F.3d 42, 45 (4th Cir. 1994).

5

To prevail on a claim of prosecutorial misconduct, a defendant must show that the remarks were improper and that they prejudicially affected his substantial rights so as to deprive him of a fair trial. See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). Moreover, rather than looking at isolated statements, we must review the entire proceeding to see if the alleged misconduct undermined the trial's fundamental fairness. See United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995). In determining whether there was prejudice, this court considers (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused, (2) whether the remarks were isolated or extensive, (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused, and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. See United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir. 1983).

We need not decide whether the remarks in this case were improper. We note, however, that viewing the totality of the circumstances, the prosecutor's statements were invited, which generally weighs in favor of the Government. See United States v. Young, 470 U.S. 1, 12-13 (1985). On the other hand, the prosecutor improperly vouched for the credibility of its witnesses. See United States v. Moore, 710 F.2d 157, 159 (4th Cir. 1983). In any event, Teel cannot prevail on his claim because he cannot show prejudice, as required by Olano.

The prosecutor's remarks may have misled the jury. However, they were not extensive in light of defense counsel's attack on the Government's witnesses. Also, the prosecutor's remarks were only a brief part of her rebuttal. Although they were the last words spoken to the jury, which generally weighs in favor of reversal, the prosecutor was responding to the defense counsel's argument. See Young, 470 U.S. at 12-13 (holding that conviction will not be reversed if prosecutor's argument was invited by defense's argument and did no more than "right the scale"). Furthermore, the evidence of Teel's guilt was strong, consisting of the testimony of two of his confederates and the corroboration by Pritchard, who was acting as a confidential informant. Pritchard and his vehicle were searched before and after the transaction and he was wired during the transaction. Further, police observed Pritchard's vehicle as he went to the transactions and con-

6

firmed his presence in the vicinity at the time of the second drug transaction. Although Teel challenges the Government witnesses' credibility, credibility determinations are for the jury to make and will not be disturbed on appeal. See United States v. Saunders, 886 F.2d 56 (4th Cir. 1989). There is no suggestion that the prosecutor made the comments to divert the jury's attention; rather, the remarks were an invited response to defense counsel's closing argument. Therefore, we do not find plain error in the prosecutor's closing argument.

Next, defense counsel raises an issue at Teel's request in accordance with Anders v. California, 386 U.S. 738 (1967). Teel contends that testimony by the case agent to the grand jury resulting in his indictment was not supported by the evidence at trial. Specifically, Teel contends that it was never proven that he was a"distributor" of illegal drugs, that he was part of an "allegiance" of conspirators, or that he held "proceeds" of drug transactions.

A post-verdict claim of prosecutorial interference with the grand jury's determination of probable cause is rendered harmless by the verdict of the petit jury, unless the defect is "so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment." Midland Asphalt Corp. v. United States, 489 U.S. 794, 802 (1989). Here, the petit jury's verdict was supported by substantial evidence that showed Teel's guilt beyond a reasonable doubt. Under the facts of this case, we cannot say that any deficiency of proof before the grand jury was fatal to the validity of the indictment. Accordingly, we find no basis for reversal.

We affirm Teel's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7