**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 97-4080

LEONARD ROY WOOD, JR.,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Terrence W. Boyle, Chief District Judge.
(CR-95-126-BO)

Argued: December 4, 1998

Decided: March 30, 1999

Before MICHAEL and MOTZ, Circuit Judges, and GOODWIN,
United States District Judge for the Southern District of West
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Victoria D. Little, Decatur, Georgia, for Appellant. Harry
Thomas Church, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Charlotte, North Carolina, for
Appellee. **ON BRIEF:** Mark T. Calloway, United States Attorney,
Brian Lee Whisler, Assistant United States Attorney, OFFICE OF
THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for
Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Leonard Roy Wood appeals his conviction for conspiracy to distribute marijuana. Wood asserts that the district court erred in several respects: by allowing the Government to use certain summary charts in its rebuttal argument, by limiting his attorney's opening statement, by excluding drug treatment records pertaining to Government witnesses, and by excluding evidence that the Government had dropped a charge of unlawful importation of marijuana that had originally appeared in the indictment. Wood also contends that the district judge excessively criticized his attorney and improperly interfered with the examination of witnesses, thereby denying him the effective assistance of counsel and a fair trial. Finally, Wood maintains in a separate motion to this court that the transcript of the proceedings below omits some of the district court's alleged abuse of his attorney, that it is inaccurate in other respects, and that it therefore constitutes an independent basis for reversing his conviction. Although the record in this case does present a picture of growing frustration on the part of the district court, neither the district court's comments nor any of Wood's other contentions amounts to reversible error. We therefore affirm Wood's conviction and deny his motion.

I.

On September 6, 1995, a grand jury indicted Wood on counts of conspiracy to import and distribute marijuana for activities occurring between 1993 and 1995. The Government dropped the importation charge on March 11, 1996, and trial on the distribution charge began on March 18, 1996.

Before jury selection, Wood's attorney moved the court to order the release of drug treatment records pertaining to various Government witnesses. The court denied the motion pending a showing of

"proffered relevance." When the question of a witness's drug treatment history arose during testimony, the court orally ordered the facility in question to supply the relevant records. A written order to the same effect was issued the next day. Wood states that "it is not known to whom the order was communicated, but the evidence closed without production of the records."

In her opening statement at trial, Wood's attorney attempted to describe events dating back to the early 1980's in order to suggest that the Government witnesses had a motive to fabricate testimony against Wood. The district court ruled these comments irrelevant. Wood's attorney also attempted to introduce evidence of the fact that the Government had indicted Wood for importation of marijuana and then dropped the charge, but the district court sustained the Government's objection to this inquiry as also irrelevant.

Prior to the parties' closing arguments, the Government revealed that it intended to use two summary charts representing records of telephone calls made to and from phone numbers registered to various members of the alleged conspiracy, including Wood. Wood's attorney briefly inspected the charts and objected to them on the ground that they appeared to be inaccurate. The court denied the objection. When the Government failed to use the charts in its initial closing, Wood's attorney objected in anticipation of the possibility that the Government might try to use the charts in rebuttal, leaving her no chance to respond. The court denied this objection as well. In her closing argument, Wood's attorney noted what she believed to be the inaccuracies in the charts. When the Government used the charts in its rebuttal argument, Wood's counsel objected again, and the court again denied the objection. A member of the jury asked if the jury could review the charts in the jury room, and the court refused this request because "the charts were neither offered nor received in evidence, and so you may not consider those as proof."

On March 22, 1996, the jury convicted Wood of conspiracy to distribute marijuana; on January 23, 1997, the court sentenced him to 84 months imprisonment. A week later, on January 30, 1997, Wood filed this appeal.

In August 1997, Wood's counsel discovered that the trial transcript had never been filed with the district court, and that the original tran-

3

script was in the possession of the prosecutors. At the request of the district court, the prosecutor filed the transcript with the district court.

In preparing for this appeal, Wood's attorney learned that the transcript was inaccurate and incomplete. She contacted the court reporter, who allegedly denied at first that the transcript was faulty. Later, however, the court reporter filed nine additional pages of transcript with the district court. Wood maintains that these pages are inaccurate as well, and that other omissions and inaccuracies in the transcript remain uncorrected. After an unsuccessful attempt to reconstruct the record in order to present the Government with a stipulation regarding its contents, Wood filed a motion with this court requesting reversal of his conviction because of the allegedly defective transcript.

II.

Wood's motion concerning the transcript and his closely related complaints about the district court's asserted abuse of his counsel present his most substantial assertions of error, and we therefore address them first.

A.

Rule 10(e) of the Federal Rules of Civil Procedure provides as follows:

> If any difference arises as to whether the record truly discloses what occurred in the district court, the <u>difference shall be submitted to and settled by that court and the record made to conform to the truth</u>. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the district court either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.

4

Fed.R.App.P. 10(e) (emphasis added).

Wood's failure to submit the alleged problems with the record to the district court permits us to refuse to consider the issues raised by those allegations. See Lothscheutz v. Carpenter , 898 F.2d 1200, 1208 (6th Cir. 1990) ("defendants must pursue their challenges to the record's accuracy in the district court"); Bilmar Drilling, Inc. v. IFG Leasing Co., 795 F.2d 1194, 1200 (5th Cir. 1986) (failure to comply with Rule 10 gives circuit court choice, pursuant to Rule 10(e), "of either remanding for the purpose of supplementing the record . . . or declining to consider" the underlying issue). But because the serious conflict with the district judge that Wood has described might make such an exercise futile, we believe the better course in this case is to exercise our own authority under Rule 10(e) to address the questions concerning the adequacy of the record.

Wood maintains that the defects in the trial transcript require the reversal of his conviction. The Court Reporter Act provides that

> [e]ach session of the court and every other proceeding des-
> ignated by rule or order of the court or by one of the judges
> shall be recorded verbatim by shorthand, mechanical means,
> electronic sound recording, or any other method . . . . Pro-
> ceedings to be recorded under this section include (1) all
> proceedings in criminal cases had in open court . . . .

28 U.S.C.A. § 753(b) (1993). We have recognized that the require-ment of a verbatim record of criminal proceedings is designed "to safeguard a defendant's right to appellate review," United States v. Gillis, 773 F.2d 549, 554 (4th Cir. 1985), and that "noncompliance [with § 753] seems fraught with potential for mistake and possible prejudice," United States v. Snead, 527 F.2d 590, 591 (4th Cir. 1975). We have also stated that "[t]he direction[of § 753] is simple and clear; the statute should be obeyed." United States v. Hanno, 21 F.3d 42, 48 (4th Cir. 1994) (quoting Snead, 527 F.2d at 591 (4th Cir. 1975)).

The requirements of the § 753(b) are thus properly regarded as mandatory. See, e.g., United States v. Winstead, 74 F.3d 1313, 1321 (D.C. Cir. 1996); United States v. Gallo, 763 F.2d 1504, 1530 (6th

5

Cir. 1985); Casalman v. Upchurch, 386 F.2d 813, 814 (5th Cir. 1967). In criminal cases, those requirements apply not only to the presentation of evidence at trial, but also to such activities as the entry of a guilty plea, Herron v. United States, 512 F.2d 439, 441 (4th Cir. 1975); proceedings concerning jury selection, Hanno, 21 F.3d at 48; Parrott v. United States, 314 F.2d 46, 47 (10th Cir. 1963); sidebar conferences, see Winstead, 74 F.3d at 1321; United States v. Sierra, 981 F.2d 123, 127 (3d Cir. 1992); and arguments of counsel, United States v. Bebik, 333 F.2d 736, 738 (4th Cir. 1964). Responsibility to ensure compliance with the statute lies with the court, not the reporter or the parties, see Gallo, 763 F.2d at 1530; United States v. Garner, 581 F.2d 481, 488 (5th Cir. 1978); Casalman, 386 F.2d at 814; and accordingly violations of the statute ordinarily constitute judicial error.

A violation of the statute only constitutes reversible error, however, if the defendant can show "that the missing portion of the transcript specifically prejudices his appeal." Gillis , 773 F.2d at 554. "The lack of a record does not warrant reversal as long as the reviewing court is satisfied that no error occurred at trial." Id.

Wood does not claim, and nothing suggests, that the record here is so woefully inadequate that it makes his other, more substantive assignments of error unreviewable. Cf. United States v. Wilson, 16 F.3d 1027 (9th Cir. 1994). Moreover, although he alleges numerous inaccuracies in the transcript, he fails to specify any prejudicial errors that were obscured by them.

With these facts and principles in mind, we examine Wood's specific claims.

B.

Wood first contends that numerous instances in which the district court abused his attorney were not recorded.

Wood's most particular and emphatic contention in this regard is that the transcript omits the district court's reaction to an attempt by Wood's attorney, after the jury had been sent out for deliberations, to

6

put objections to the jury charge on the record. Wood's attorney maintains that "when counsel attempted to have[certain] exceptions [to the jury charge] placed on the record, the court left the bench while she was speaking and ordered the court reporter not to put anything on the record." The record of this incident, she contends, fails to show that the district judge "screamed at counsel, interrupting her; ran from the court room and then returned, instructing the court reporter not to put anything that was said on the record." As we have it, the record only indicates that the judge invited Wood's attorney to file a written motion on that matter, and then declared a recess. Wood's attorney maintains that this portion of the record was fabricated.

Wood has submitted affidavits signed by his daughter, his son-in-law, his attorney, and his attorney's husband supporting this account. The court reporter also gave an affidavit, in which she stated that the judge did instruct her not to put anything further on the record on this occasion, but that he did so when the court was in recess. Finally, the Government concedes that an unrecorded confrontation between the district judge and Wood's counsel occurred after the jury retired, but contends that the judge did not do or say anything improper at that time.

Even accepting Wood's account of this event in full, we cannot conclude that his conviction should be reversed. Wood does not contend that any erroneous rulings of law affecting his rights were made during the unrecorded interchange, and he does not assert any defects in the jury charge on this appeal. Indeed, he does not specify anything that occurred on this occasion to interfere with the fair determination of his guilt or innocence. The jury had withdrawn to deliberate, and therefore it is difficult to see how the particulars of what happened in court at the time of the alleged events could have affected the integrity of his conviction in any way.

Wood alleges another, more serious, violation of the Court Reporter Act by contending that the record omits incidents in which the judge berated his attorney before the jury at the opening of proceedings on two occasions. All comments of the judge before the jury must be recorded. See Gallo, 763 F.2d at 1529 n.37 (comments of judge to jury, even about jury's physical comfort, should be

7

recorded). But Wood fails to specify the nature of the judge's alleged abuse on these occasions. The government prosecutor, who has demonstrated his credibility by acknowledging the previously discussed unrecorded confrontation (in the absence of the jury), flatly denies that any such "abuse" before the jury was unrecorded. Wood's general allegations, expressly denied by the representative of the United States, do not provide a sufficient basis for us to conclude that reversible error may have occurred at trial, or that the alleged omissions in the record prejudice this appeal.

Furthermore, our review of the incidents of the court's alleged mistreatment of counsel that do appear in the record causes us to doubt that the supposedly omitted incidents would actually qualify as "abuse" of a kind that, even in the aggregate, could constitute prejudicial error. Most of the recorded instances in which the district court allegedly "demeaned" defense counsel occurred outside the presence of the jurors, and therefore could not have influenced their perception of the defense. The few instances of alleged abuse that did occur before the jury, while doubtless unpleasant, do not provide grounds for reversal. The harshest of these incidents reflect sternness and a degree of impatience with defense counsel on the part of the court,[1]

_____

[1] Perhaps the most acrimonious interchange before the jury occurred when defense counsel attempted to suggest that a witness had made an inconsistent statement in prior testimony regarding the location of a trailer:

> Q. It's not near this place?
>
> A. That's not near that place.
>
> Q. Then you were confused when you said it was.
>
> THE COURT: Well, I believe she's saying that she didn't say that this morning. Isn't that what you're saying?
>
> THE WITNESS: Yes, sir.
>
> THE COURT: All right. Well, don't mischaracterize her testimony.
>
> And you're supposed to stay back at your seat unless you're given permission to come up to a witness with an exhibit. I understand the practice in this district is the same as the practice in the Eastern District court counsel are seated when they exam-

8

and some constitute rather sharply-worded evidentiary rulings.**2** As this court has held, "a judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration--" cannot entitle a defendant to a new trial. United States v. Castner, 50 F.3d 1267, 1274 (4th Cir. 1995) (quoting Liteky v. United States, 510 U.S. 540, 556 (1994)).

We therefore conclude that Wood has failed to adequately demonstrate either that the allegedly omitted incidents of abuse involved any

_____

> ine witnesses as is the practice in the state courts in North Carolina. Are you aware of that?

> DEFENSE COUNSEL: No. I'm not aware of that, Your Honor.

> THE COURT: Then I so advise you.

> DEFENSE COUNSEL: In my district you have to stand.

> THE COURT: Well, this isn't my district either.

> DEFENSE COUNSEL: Well, I understand. I didn't know that, and I'll be glad to be seated if that's the rule in this court.

> THE COURT: Well, whether or not you're glad. I mean, that's the rule.

> DEFENSE COUNSEL: That might be difficult for me.

\* \* \*

> THE COURT: Well, if you're having a problem with it, just ask and I'll accept your problem.

The court's treatment of counsel here, although less than friendly, certainly cannot be considered an example of the court"demeaning" counsel in a way that would substantially damage the jury's ability to make a fair determination of Wood's culpability.

**2** For example, in sustaining an objection to a question about another witness's testimony, the judge instructed defense counsel as follows:

> The jury is going to recall whatever she said, and that's their duty. And you're not permitted to ask the witness did somebody say such and such and you remember him saying so and so. That's an improper question. Now, confine yourself to proper questions, please.

9

specific, prejudicial error, or that the putative omission of these incidents has "specifically prejudice[d] his appeal" in any other respect. Gillis, 773 F.2d at 554.

It might be argued that even if none of these allegedly omitted incidents of "abuse" prejudiced Wood's rights in themselves, their appearance in the record would have lent credibility to Wood's contention that the trial judge's hostility to the defense deprived him of a fair trial. The lack of a full record could, on this rationale, be construed as prejudicial to Wood's appeal. If Wood's other suggestions regarding the judge's allegedly hostile behavior at trial were more substantial, we might be persuaded by such an argument. As we have noted, however, the incidents of alleged abuse that do appear in the record do not constitute prejudicial error, and Wood has failed to allege with specificity any omitted incidents of mistreatment that could constitute such error. Wood has thus failed to make an adequate showing that his appeal is prejudiced by the alleged omission from the record of the various incidents in which the court allegedly mistreated his attorney.

C.

Wood maintains that his attorney was so intimidated by the court's harsh treatment that she was unable to provide him with effective assistance of counsel. Review of this claim on a record that assertedly omits some of the treatment in question does present difficulties, but we believe that the record as it stands provides a sufficient basis to discount this assignment of error. Defense counsel's vigorous and persistent assertion of her client's rights, as reflected in the record, plainly demonstrates that she was in no way intimidated, and that she effectively represented Wood throughout the trial.

D.

Wood also contends that numerous objections and rulings made during the trial were omitted from the record. More particularly, he asserts that

> [i]n many instances, counsel advised the court that she wished to make a motion outside the presence of the jury

(indicating a motion for mistrial). Instead of permitting counsel to make said motions in a timely manner, the court required counsel to wait until a recess. The court reporter has omitted all of the motions and rulings made during any such recess from the transcript. In each instance, the court reporter was present and presumably taking down the proceedings. The court reporter has advised counsel that she recorded everything that was said unless it was"off the record". To counsel's knowledge, nothing that transpired during the trial was "off the record".

Wood does not expressly contend that the practice of requiring his attorney to wait until a recess to record motions for mistrial constituted reversible error. It clearly does not. Allowing objections to be made at the time of the conduct in question may sometimes better ensure that motions and rulings on such conduct respond faithfully to the actual events. Cf. Snead, 527 F.2d at 591 (stating practice of requiring defense counsel to summarize bench conferences at recesses in trial may impose an excessive burden on defense counsel to "accurately summariz[e] those conferences which may be important to the presentation of an appeal"). In other circumstances, however, a court may properly conclude that the disruption caused by motions requiring the absence of the jury outweighs the value of having motions recorded immediately.

Thus the error, if any, lay in the failure to record such motions and the rulings upon them. Such motions and rulings plainly must be recorded; even if the court requires them to be made during what it or the court reporter denominates as a "recess," they still constitute matters occurring in "open court" for the purposes of the Court Reporter Act. 28 U.S.C.A. § 753(b).

The omission of such motions and rulings could only warrant reversal, however, if Wood were able to specify how the omission of this material constituted prejudicial error. His general allegation, cited above, that motions and rulings were omitted fails to do so.

Wood does, however, specify several occasions upon which objections, motions for mistrial, and rulings were omitted from the record. He first asserts that the record fails to reflect his attorney's objection

11

and motion for mistrial, as well as the court's ruling denying the motion, in response to a colloquy in which the district court allegedly "restored credibility to Government witness who had been thorough impeached." Similarly, Wood contends that the record omits his attorney's motion for mistrial when the court interrupted her attempt to impeach another witness and instructed the jury that the testimony being elicited was "for the purposes of impeachment" but was "not relevant to the trial of the issue on trial in this case, which is the charge of conspiracy . . . against the defendant."

Neither the colloquy with the witness nor the court's interruption and instruction, however, are alleged to have been incompletely or inaccurately recorded. Moreover, the Government does not maintain that the absence of Wood's objections and mistrial motions indicate a waiver of his right to object to the court's conduct, and Wood does not contend that the actual language of any of the allegedly omitted rulings is significant. These putative omissions thus do not in themselves have any significance for any assignment of error at issue on this appeal. The only real question with regard to this argument is whether the court's conduct toward the witnesses and the jury, which is fully reflected in the record, constituted error. We address this question within section V.

Wood also contends that his attorney objected when the court attempted to have a witness specify the kind of automobile Wood drove, and that the record omits the objection and the court's statement instructing her to make her objection at the next recess. Wood alleges as well that an objection and a motion for mistrial that his attorney made with regard to the Government's use of charts in rebuttal were omitted from the record. As stated above with regard to motions for mistrial, objections and motions must be recorded, but no error necessarily inheres in the court's requirement that they be made at breaks in the trial. We consider below whether the district court erred by inappropriately questioning witnesses or by allowing the government to use the charts in rebuttal. All that remains of these contentions, then, are the failure to record Wood's objections to this conduct, and Wood's motion for mistrial regarding the use of the charts. Again, however, the Government does not contend the absence of the objections or the motion in the record indicates any kind of waiver on Wood's part, and Wood does not otherwise indicate how

12

their omission could prejudice him. For these reasons, we must conclude that they do not.**3**

E.

In sum, we find Wood's arguments concerning the record and the asserted mistreatment of his attorney to be unpersuasive. We therefore decline to reverse his conviction on either of these grounds.

III.

Wood contends on several grounds that the prosecution's use of charts summarizing telephone records that had been admitted into evidence deprived him of a fair trial.

He first argues that the use of the charts violated his due process rights in various respects. He contends that the charts were not based on the evidence because they represented Wood as the person who made and received the calls despite the fact that no evidence has been introduced as to who actually made and received those calls. In presenting the charts to the jury, the Government expressly acknowledged that there was no direct evidence as to who made and received the calls, but it invited the jury to infer that the calls were made to and from the individuals to whom the phone numbers belonged. The prosecution is entitled to argue that the evidence gives rise to an inference as long as the suggested inference can be reasonably drawn from the facts in evidence. United States v. Wilson, 135 F.3d 291, 298 (4th Cir. 1998). We conclude that, based on the facts in evidence in this case, one could reasonably infer that the calls were made and received in the manner represented in the charts. We therefore hold that no error resulted from the Government's use of the charts in the absence of direct evidence as to who made and received the calls in question. Wood also maintains that the charts inaccurately stated the number of calls made to various telephone numbers. But neither the joint appendix nor the record on appeal contains the telephone records, which concededly were admitted into evidence, upon which the charts were

_____

**3** Wood makes several other allegations of defects in the transcript, but none of them comes close enough to indicating reversible error to merit comment.

13

allegedly based. It is the responsibility of the appellant to ensure that the record on appeal is complete. Fed.R.App.P. 11(a) (1998); Muniz Ramirez v. Puerto Rico Fire Svcs., 757 F.2d 1357, 1358 (1st Cir. 1985). Because Wood has not included the telephone records in the record on appeal, we cannot find any error arising from alleged discrepancies between the telephone records and the charts. Stearns v. Genrad, Inc., 752 F.2d 942, 945 (4th Cir. 1984); see Lakedreams v. Taylor, 932 F.2d 1103, 1109 (5th Cir. 1991). **4**

Wood next argues that the Government's use of the charts violated Rule 29.1 of the Federal Rules of Criminal Procedure, which provides as follows:

> After the closing of evidence the prosecution shall open the argument. The defense shall be permitted to reply. The prosecution shall then be permitted to reply in rebuttal.

Fed.R.Crim.P. 29.1 (1998). The Advisory Committee note to this rule states that "[t]he rule is drafted in the view that fair and effective administration of justice is best served if the defendant knows the arguments actually made by the prosecution in behalf of conviction before the defendant is faced with the decision whether to reply and what to reply." Fed.R.Crim.P. 29.1 advisory committee's note. Wood contends that, by allowing the prosecution to use the charts for the first time in rebuttal, the district court erroneously disregarded the principle articulated by the Advisory Committee and violated the Rule.

We agree that the district court erred by permitting the Government to argue the telephone evidence represented in the charts for the first time on rebuttal. Proper rebuttal must respond with some degree of

_____

**4** Wood also asserts that he was not given an adequate opportunity to inspect the charts for accuracy. This contention is belied by the record. The district court suggested that the defense could have fifteen minutes to review the charts, but when defense counsel contended that this would not be enough time, the district court said, "Well, you can take a look at them, and we'll check back in 15 minutes and see if you're ready to begin your argument." After the recess, defense counsel did not contend that she needed additional time to more fully review the charts.

14

specificity to the arguments made by the defense. See United States v. McNatt, 931 F.2d 251, 256-57 (4th Cir. 1991); United States v. Taylor, 728 F.2d 930, 936-38 (7th Cir. 1984); see also United States v. Sarmiento, 744 F.2d 755, 765-66 (11th Cir. 1984). The telephone record evidence here did not speak directly or specifically to Wood's argument in any way; it was merely additional evidence tending to suggest his guilt. Moreover, it is plain from the record that the prosecution regarded the telephone evidence and the charts as strongly persuasive, and that it was saving them for rebuttal so that it could present these powerful elements of its argument to the jury as the last word on the evidence. "Fair response" cannot be construed so broadly as to allow the Government to simply end-run Rule 29.1, as it sought to do in this case.[5]

The impropriety of the Government's rebuttal argument was not, however, prejudicial. Wood's attorney anticipated the Government's use of the charts in her summation by arguing that they misrepresented the evidence, and she interposed an objection on this ground during the Government's discussion of the charts in rebuttal. Moreover, the district court instructed the jury that the charts had no evidentiary value, thereby further minimizing any danger that the jury would overemphasize the charts. Cf. Bennett v. Angelone, 92 F.3d 1336, 1347 (4th Cir. 1996) (jury instruction that attorneys' comments were not evidence reduced prejudicial effect of prosecutor's improper closing argument).

We conclude that the prosecution's use of the charts in its closing argument does not warrant reversal.

IV.

Wood next contends that the district court erred in making certain

_____

[5] We note that the "invited response" doctrine of cases such as United States v. Young, 470 U.S. 1 (1985), and Boyd v. French, 147 F.3d 319, 329 (4th Cir. 1998), applies most properly to the question of whether prejudice should be construed to attach to improper comments by the prosecution that have been prompted by improper comments by the defense, and does not pertain directly to what constitutes proper rebuttal.

evidentiary rulings. We review evidentiary rulings for abuse of discretion. United States v. D'Anjou, 16 F.3d 604, 610 (4th Cir. 1994).

A.

The first challenged evidentiary ruling occurred when the district court interrupted the opening statement of Wood's counsel in order to prohibit her from further describing or presenting evidence of events that, Wood maintains, would have shown that the Government's witnesses were biased against him. Wood sought to show that the Government's primary witness, Robert Arnett, believed that Wood had helped defraud him of $30,000 in a fake drug deal during the early 1980's. The Government's case was based primarily upon the testimony of a "close-knit" group of drug dealers consisting of Arnett, his best friend, his wife, his sister, and her boyfriend. Wood sought to suggest to the jury that the bad blood arising from the fake drug deal gave these witnesses a motive, in addition to the sentence reductions that all but one of them had obtained in exchange for cooperation, to fabricate testimony implicating Wood in the conspiracy. The district court ruled evidence concerning the fake drug deal irrelevant because it occurred well prior to the time of the conspiracy charged in the indictment.

We note that the district court has broad discretion to control opening statements in order to prevent the presentation of irrelevant, inadmissible, misleading, or diversionary material. See United States v. Howard, 115 F.3d 1151, 1156 (4th Cir. 1997); United States v. Poindexter, 942 F.2d 354, 360 (6th Cir. 1991).

Moreover, although evidence of a witness's bias is "almost always relevant," United States v. Abel, 469 U.S. 45, 52 (1984), a trial court has discretion to limit inquiry regarding bias "based on concerns about, among other things, harassment, prejudice, confusing of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant," United States v. Van Arsdall, 475 U.S. 673, 679 (1986). Accordingly, we have held that "once some inquiry into bias has been permitted, a trial court has discretion to limit [inquiry] on the grounds of, inter alia, confusion of the issues or marginal relevance." United States v. United Medical and Surgical Supply Corp., 989 F.2d

16

1390, 1406 (4th Cir. 1993) (quoting United States v. Greenwood, 796 F.2d 49, 54 (4th Cir. 1986)).

The district court here allowed Wood to present evidence that the Government's witnesses had entered into plea agreements. The court could have concluded, within the sound exercise of its discretion, that evidence of bias due to events occurring almost ten years prior to the alleged conspiracy would not significantly supplement the suggestions of bias connected with the plea agreements, and that whatever value in showing bias that such evidence had would be outweighed by its tendency to confuse and divert attention from the main issues in the case. We therefore conclude that the district court did not err in excluding discussion and evidence pertaining to the fake drug deal.

B.

Wood also argues that the district court erred by refusing his request, prior to jury selection, for an order directing the release of drug treatment records pertaining to various government witnesses. The records would allegedly have shown that one of the witnesses was at an in-patient drug treatment facility at a time when he claimed to have been meeting Wood to make drug transactions. Wood contends that the records would have also been valuable for impeachment of the government witnesses generally.

The district court did not, however, categorically refuse to order the release of the records. Rather, it refused to do so only provisionally, pending a showing of "proffered relevance." When the question of a witness's drug treatment history arose during testimony, the court without hesitation ordered the facility in question to supply the relevant records. The district court's rulings concerning the drug treatment records plainly were not erroneous. The fact that Wood failed to follow up on the order that was issued does not convert the district court's conduct into reversible error.

C.

Wood next maintains that the district court erred by refusing to let him introduce evidence showing that he had originally been indicted

17

for importation of marijuana as well as conspiracy, and that the Government had dismissed the importation charge. Although Wood cites no controlling precedent on the point, the Second Circuit has held evidence that the prosecution has maintained inconsistent theories of a case to be admissible in some circumstances. See United States v. Salerno, 937 F.2d 797, 811 (2nd Cir. 1991), rev'd on other grounds, 505 U.S. 317 (1992); United States v. GAF Corp. , 928 F.2d 1253, 1260 (2nd Cir. 1991). Wood does not argue, however, and nothing suggests, that the allegations of importation were in any way inconsistent with the allegations of conspiracy.

Moreover, as the Second Circuit has also held, an indictment does not constitute the formal adoption of a theory of the case by the Government, see GAF, 928 F.2d at 1261, and binding "the Government forever to a preliminary investigative theory to which it never formally committed would only discourage further investigation and thereby impede the truth-finding process," United States v. Purdy, 144 F.3d 241, 246 (2nd Cir. 1998). Wood does not otherwise indicate how the district court's exclusion of this evidence was improper.[6] We therefore conclude that the district court did not err in ruling evidence of the dismissed importation charge irrelevant.

V.

Finally, Wood contends that the district court denied him a fair trial by improperly questioning witnesses and by interrupting cross-examination in order to give jury instructions that, Wood maintains, represented his attempt to impeach a witness as immaterial and irrelevant.

With respect to the district court's participation in the examination of witnesses, we note that a trial judge must take care to avoid the appearance of bias when questioning witnesses and commenting on

_____

[6] Wood contends in his brief that the importation charge was dismissed because the Government learned that statements regarding importation, which were made by the same witnesses who testified at trial, were false. Wood provides no support whatsoever for this contention, and we obviously cannot simply take his word for it. We therefore disregard this aspect of Wood's argument.

18

evidence. See United States v. Wilson, 118 F.3d 228, 237 (4th Cir. 1997). We have scrutinized the record here, however, and find that the district court's questioning, although frequent, provides no basis for reversal. See United States v. King, 119 F.3d 290, 294 (4th Cir. 1997). We caution district courts to refrain from taking on the role of an advocate when questioning witnesses, see United States v. Wilson, 135 F.3d 291, 307 (4th Cir.), cert. denied, 118 S. Ct. 1852 (1998); a witness who on cross-examination contradicts himself can be rehabilitated by counsel for the opposing side on redirect examination. A court has no obligation, or right, to rehabilitate a witness.

Wood also contends that the district court erred in interrupting the cross-examination of Robert Blatta in order to issue lengthy jury instructions that, according to Wood, vitiated his efforts to impeach Blatta and suggested to the jury that "the jury was there for one purpose, to convict Wood of the crime of conspiracy." It is clear in context, however, that the judge merely sought to clarify that Wood's extensive inquiry into Blatta's criminal history was directed at impeachment, and to ensure that this inquiry did not cause the jury to lose sight of the central question before them -- Wood's guilt or innocence of the conspiracy charges. In doing so, the trial judge did not, as Wood contends, usurp the role of the prosecutor, see United States v. Parodi, 703 F.2d 768, 775-76 (4th Cir. 1983), or convert the jury into his puppet. Rather, he merely sought to assist the jury, as he plainly may, by "explaining, summarizing, and commenting on the evidence." Seidman v. Fishburne-Hudgins Educ. Found., Inc., 724 F.2d 413, 417 (4th Cir. 1984).

VI.

In sum, Wood has failed to show prejudicial error sufficient to warrant reversal of his conviction or a new trial. We therefore affirm his conviction and deny his motion for reversal.

AFFIRMED

19